The Talladega County Department of Human Resources (DHR) filed a petition on May 18, 1993, in the Juvenile Court of Talladega County, requesting that A.D.H. (the mother) be required to "provide the minor child [L.B.H.] with any and all necessary medication and medical treatment." The child, who at that time was two and one-half years old, had tested positive for human immunodeficiency virus, commonly known as HIV, which infects and damages certain blood cells that are part of the body's immune system. DHR alleged that the mother had failed "to give the child needed medication [and] to take the child to scheduled doctors' appointments and has refused to provide the child with other proper medical care and treatment." The father's whereabouts *Page 970 
were unknown. No responsive pleadings were filed by the mother.
On July 30, 1993, following a hearing, the mother was ordered to make L.B.H. available for transportation by DHR to scheduled doctor's appointments. Further, she was ordered to cooperate with the physicians at Children's Hospital and with a local health care provider in their efforts to treat L.B.H. and to follow all recommendations by them regarding the child's treatment. The mother appeals.
Following the child's diagnosis of HIV, Dr. Marilyn Crain of Children's Hospital recommended treatment with Retrovir (AZT) and also discussed other treatment options with the mother. Dr. Crain testified that although the mother was given a prescription for AZT in February 1993, the drug was never administered to the child.
By May 1993, L.B.H. had had no weight gain and no increase in the circumference of her head; Dr. Crain believed these factors to be "a consequence of the HIV infection." At the May visit to Children's Hospital, a colleague of Dr. Crain and a pharmacist who works at Children's Hospital talked with the mother and maternal grandmother for a long time, attempting to reinforce the diagnosis of HIV and the recommendation of AZT treatment. They also discussed the experiences of other children who had been treated with AZT. Dr. Crain stated that the purpose of that meeting was to "try to allay some of the family's fears about side effects [of AZT] being so great that they would outweigh any potential benefit." The family had been "very concerned" about possible side effects of the drug. However, at trial Dr. Crain expressed this opinion:
 "[T]he underlying condition that we are trying to treat in this case is very serious and in my view it's worth a risk to carefully follow a child and look for side effects with the hope that . . . the treatment would interfere with . . . the cell division and growth of the virus itself and therefore slow down the progression of the disease. We often see improvement in growth. There have been studies suggesting that developmental effects of the virus can be reversed by treatment [with AZT] or at least slowed down."
She went on to state that although HIV infection eventually leads to death in children, "treatment does two things. It slows the replication of the virus and slows the development of clinical symptoms."
The mother repeatedly stated at trial that she did not believe L.B.H. was infected with HIV and that she would not give the child any medication commonly used to treat HIV.
The dispositive issue is whether the State may require a mother to submit her minor child to treatment for HIV, when the mother objects to that treatment.
The mother contends that the juvenile court order violates her constitutional due process rights. She raised no constitutional arguments, however, either at trial or in post-trial motions. The record on appeal must affirmatively demonstrate errors of the trial court. Facts not disclosed by the record may not be considered. Holsonback v. Holsonback,518 So.2d 146 (Ala.Civ.App. 1987).
The mother argues that the State did not prove by clear and convincing evidence that the treatment ordered by the trial court was "emergency medical treatment" as defined in Ala. Code 1975, § 12-15-30(c)(1)b.[1] However, Dr. Crain's testimony revealed that it was her opinion that "giving the medication would prolong [L.B.H.'s] life and the quality of that life."
The law is clear that our review is limited to correcting errors identified by the appellant. The trial court had the opportunity to observe the witnesses in making its determination. See Turquitt v. Turquitt, 506 So.2d 1014
(Ala.Civ.App. 1987); and Flowers v. Flowers, 479 So.2d 1257
(Ala.Civ.App. 1985). On appeal, this court will not weigh the evidence, but will, instead, indulge all *Page 971 
favorable presumptions to sustain the trial court's ruling and we will reverse only on a showing that the trial court's findings are plainly erroneous or manifestly unjust.Seifert v. Houlditch, 583 So.2d 274 (Ala.Civ.App. 1991). This court cannot reverse a judgment supported by the evidence, absent an abuse of discretion, or a judgment that is clearly and palpably wrong. Williams v. Williams, 402 So.2d 1029
(Ala.Civ.App. 1981).
The trial judge stated, "The Court has got to decide whether the circumstances are serious enough so that I should substitute my judgment or the judgment of the Court for the judgment of a parent." The mother's adamant belief at trial that her child was not infected with HIV leads us to conclude that she was incapable of making a well-reasoned, rational decision regarding treatment that was in the best interests of her child. Accordingly, on this particular set of facts, we affirm the judgment of the trial court.
Our decision to affirm the trial court does not mean that this court will affirm all cases where a trial court orders a parent to subject a child to medical treatment against the parent's wishes. Nor does this decision abrogate the authority of an informed and reasoned parent to make crucial and sometimes controversial decisions concerning medical treatment of their children. It is essential that the trial courts continue to consider cases involving the welfare of children on a case-by-case basis. The seriousness of this decision and the nature of this case mandate that the trial court retain jurisdiction to periodically reassess the situation. It may later be determined that the side effects of the treatment are detrimental to the child or to the quality of life of the child.
AFFIRMED.
All the Judges concur.
[1] "(c) The court shall have original jurisdiction in proceedings:
"(1) Concerning any child:
 "b. Who requires emergency medical treatment in order to preserve his life, prevent permanent physical impairment or deformity or alleviate prolonged agonizing pain."